Donald Peder Johnsen (011545)
dpj@gknet.com
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000
Attorneys for defendant Cleveland Indians
Baseball Club, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Jenae Finton, | ) No. 2:19-cv-02319-MTL |
|---|---|
| Plaintiff, | ) **MOTION FOR SUMMARY JUDGMENT** |
| v. | ) (Oral Argument Requested) |
| Cleveland Indians Baseball Co., LLC, | ) |
| Defendant. | ) |

Defendant Cleveland Indians Baseball Club, LLC, moves under Fed. R. Civ. P. 56 for an order granting summary judgment in its favor on the plaintiff's complaint. No genuine issues of material fact exist, and the Club is entitled to summary judgment in its favor as a matter of law.

This motion is based upon the file, record, and proceedings herein, and upon the following Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 31st day of July, 2020.

GALLAGHER & KENNEDY, P.A.

By:/s/ Donald Peder Johnsen

Attorneys for defendant Cleveland Indians
Baseball Club, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

**BACKGROUND INFORMATION**

Plaintiff Janae Finton was employed by the Club at its spring training facility in Goodyear as an hourly employee. She initially was employed on a part-time basis, with the understanding was that she would be working 28 hours per week, and then up to 39 hours per week during spring training. See Defendant's Statement of Facts in Support of Motion for Summary Judgment (July 31, 2020) ("DSOF") ¶¶ 1-2.

The Club used a computer-based system called the "ABI" system throughout Ms. Finton's employment to manage various data, including recording time or hours worked by employees. DSOF ¶ 7. Ms. Finton used the ABI time clock system to record her hours worked; she would scan her employee badge to clock in and clock out. DSOF ¶ 8. As far as she knew the ABI time clock system accurately recorded her starting and stopping times; on those few exceptions when the ABI time clock system did not accurately record her starting and stopping times she took steps to address the error. DSOF ¶¶ 9-10. She does not know if she ever saw the ABI time clock system inaccurately recording the number of hours that she was working. DSOF ¶ 11. On occasions when she forgot to clock in or out, she asked her supervisor to adjust her time in the timekeeping system. DSOF ¶ 12.

Another way for Ms. Finton to record her hours worked was to log into the ABI system on a computer and access the ABI program's timekeeping or time-recording function. DSOF ¶ 13. The computer-based ABI system was capturing the same raw data as the ABI time clock system. DSOF ¶ 14. Ms. Finton was trained on the use of the ABI system, including training and information on how to log into the ABI computer-based timekeeping system and record time. DSOF ¶ 15. She herself gave instructions to other employees about how to log into the ABI timekeeping system. DSOF ¶ 22. The ABI system was "very simple and easy to use." DSOF ¶ 23.

On occasions when Ms. Finton found herself "locked out" of the ABI system, and needed to "clock in," she requested assistance from the Club, and the Club

provided her with her user name and password. DSOF ¶ 16. She does not know any instances when she would call the Club to request assistance logging into the ABI system and the Club was unable to fix the problem. DSOF ¶ 18.

Ms. Finton resigned her employment with the Club in January 2019. She then commenced this action, alleging that she worked various overtime hours for which she was not paid. She also alleges that the Club violated the disclosure provisions of Arizona's paid sick leave and wage payment statutes.

## ARGUMENT

Summary judgment is appropriate when no genuine issues of material fact exist and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 is not a "disfavored procedural shortcut." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Rather, it is an integral part of the rules designed to secure the just, speedy, and inexpensive determination of every action. See Fed. R. Civ. P. 1.

In this case, certain facts are not in dispute. Those facts demonstrate that Ms. Finton cannot establish the essential elements of her claims. Regardless of what other facts she may dispute or even prove, and notwithstanding what other arguments she may make, the Club is entitled to summary judgment in its favor on all of her claims.

**I.   THE CLUB IS ENTITLED TO SUMMARY JUDGMENT ON MS. FINTON'S OVERTIME CLAIMS.**

**A.   Ms. Finton May Not Base An Overtime Claim Upon Hours That She Did Not Record Using The Club's Reasonable Timekeeping Systems.**

When the employer utilizes a reasonable process of recording hours worked, an employee may not recover payment for hours that she claims to have worked but that she did not record using that process. See, e.g., Brown v. ScriptPro, LLC, 700 F.3d 1222 (10th Cir. 2012); White v. Baptist Mem. Health Care Corp., 699 F.3d 869 (6th Cir. 2012); Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413 (9th Cir. 1981); Brumbelow v. Quality Mills, Inc., 462 F.2d 1324 (5th Cir. 1972). Those principles preclude Ms. Finton's overtime claim.

-3-

1    As discussed above, the Club utilized a reasonable process for recording
2 time.  That process provided employees such as Ms. Finton with two alternate methods to
3 record her time (scanning her badge on the time clock in the hallway near her desk, and
4 logging in to the Club's web-based timekeeping system and entering time in that system).
5 DSOF ¶¶ 7-8.  As far as Ms. Finton knew the ABI time clock system accurately recorded
6 her starting and stopping times; on those few exceptions when the ABI time clock system
7 did not accurately record her starting and stopping times she took steps to address the
8 error.  DSOF ¶¶ 9-10.  She does not know if she ever saw the ABI time clock system
9 inaccurately recording the number of hours that she was working.  DSOF ¶ 11.  She was
10 trained on how to use the web-based timekeeping system; in fact, she also instructed
11 other Arizona employees in its use.  DSOF ¶¶ 13-15, 21-22.  As she described it, the
12 system was "very simple and easy to use."  DSOF ¶ 23.  Under all of those
13 circumstances, she cannot recover for hours that she claims to have worked but that she
14 failed to record using the Club's standard processes.
15    Those principles apply even when, as in this case, the plaintiff claims that
16 her supervisor was aware that she supposedly was working time that she was not
17 recording with the employer's normal systems.  See, e.g., Brown, 700 F.3d at 1230;
18 Harvill v. Westward Comms., LLC, 433 F.3d 428, 441 (5th Cir. 2005).  In the Brown
19 case, for example, the defendant's normal system recorded time accurately, employees
20 could access the system remotely, and the plaintiff could have used the system to record
21 hours worked.  700 F.3d at 1230.  Under those circumstances, the Court of Appeals
22 concluded that the plaintiff's assertion that he nevertheless worked additional hours failed
23 to create a genuine question of fact regarding the adequacy and accuracy of the
24 employer's records.  As the Court summarized, "where the employee fails to notify the
25 employer through the established overtime record-keeping system, the failure to pay
26 overtime is not a FLSA violation."  Id. at 1230-31.  Similarly, in the Harvill case, the
27 plaintiff claimed that her supervisor was aware of time that she actually was working but
28 that she was not recording in the employer's system.  433 F.3d at 440-41.  But she did not

present any documentation that she actually worked the time she claimed. Under those circumstances, the Court affirmed summary judgment for the employer.

The cases discussed above reflect the common-sense notion that when the employer has implemented a comprehensive system for recording time, and the evidence is that the system accurately records time, the claimant may not proceed later with a claim that she nevertheless was working <u>additional</u> time that she <u>could have</u> but <u>did not</u> record using the employer's standard process. Those principles preclude Ms. Finton's claim.

**B.     Ms. Finton Has Not Identified Any Actual Overtime For Which She Was Not Paid.**

The employer's overtime obligation arises, if at all, only when the employee works in excess of his or her statutory maximum <u>over the course of the work week</u>. 29 U.S.C. § 207(a)(1); <u>Forrester v. Roth's I. G. A. Foodliner, Inc.</u>, 646 F.2d 413, 414 (9th Cir. 1981). That an employee might work long hours on any particular <u>day</u> (or even <u>days</u>) during the week is not apposite; the question is whether she worked more than 40 hours <u>over the course of the entire week</u>. To state a claim, a plaintiff must show that she worked more than 40 hours in a given work week without being compensated for the overtime hours worked during that week. <u>See, e.g.</u>, <u>Landers v. Quality Comms., Inc.</u>, 771 F. 3d 638, 644-45 (9th Cir. 2014). That principle applies here and forecloses Ms. Finton's claim.

For example, Ms. Finton alleges that she performed substantial work preparing for a golf event in February 2017. <u>See</u> Complaint (April 10, 2019) ¶¶ 25-26; DSOF ¶ 24. But she does not know how many <u>total</u> hours she worked during the weeks when she was working on the golf event, DSOF ¶ 25, and she does not know whether she created any records or documents showing the hours that she worked on the golf event. DSOF ¶ 26. She also claims that she worked overtime during the week including February 21, 2017, creating party favors for the golf event. Complaint ¶ 27; DSOF ¶ 40. But she does not know how many hours <u>total</u> she worked during that week. DSOF ¶ 41.

1         Ms. Finton also alleges that she worked overtime on events with the Arizona Diamondbacks. Complaint ¶ 29; DSOF ¶ 27. But she does not know how many hours of overtime she worked on those events, and does not know how many total hours she worked during those weeks. DSOF ¶¶ 28-29.[1]

        Ms. Finton also alleges that she worked overtime on a June 2017 "Swaggies" event. Complaint ¶ 30; DSOF ¶ 31. But she does not know how many hours she worked on the event, and has no records of the hours that she supposedly worked on the event. DSOF ¶¶ 32-33.

        Ms. Finton also alleges that she worked seven days per week during spring training 2017. Complaint ¶ 37; DSOF ¶ 34. But she does not know how many total hours she worked during the weeks covered by that period. DSOF ¶ 35. Nor does she even know whether she was paid for those hours or not. DSOF ¶ 37.

        Ms. Finton also claims that she worked overtime during the week including July 13, 2017. DSOF ¶ 42. But she does not know how many hours total she worked during that week. DSOF ¶ 43.

        Ms. Finton also disclosed a spreadsheet that supposedly itemizes her claimed hours worked. DSOF ¶¶ 38-39. But that document does not detail the <u>total hours</u> worked during any of the particular <u>work weeks</u> that include the dates for which she claims she is owed compensation.

        Ms. Finton has the burden of proving that she performed work for which she was not properly compensated. <u>Brock v. Seto</u>, 790 F.2d 1446, 1447 48 (9th Cir. 1986); <u>Rogers v. Brauer Law Offices, PLC</u>, 2012 WL 426725, *4 (D. Ariz. 2012). She may not proceed merely on the assertion that she worked long hours on any given day or days; a plaintiff's conclusory allegations about her work schedule do not create an issue of fact. <u>See, e.g.</u>, <u>Viet v. Le</u>, 951 F.3d 818 (6th Cir. 2020); <u>Holaway v. Stratasys, Inc.</u>, 771 F.3d 1057, 1059–60 (8th Cir. 2014); <u>Carmody v. Kansas City Bd. of Police</u>

---

[1] In fact, Ms. Finton does not have a recollection of her pay check being short for the weeks including the Diamondbacks events. DSOF ¶ 30.

Comm'rs, 713 F.3d 401, 407 (3d Cir. 2013); Turner v. The Saloon, Ltd., 595 F.3d 679, 690–91 (7th Cir. 2010). Without evidence showing how many hours she worked "during any particular week," she fails to create a genuine issue of fact. Rogers, 2012 WL 426725, *6 (granting motion for summary judgment); see also Holaway v. Stratasys, Inc., 771 F.3d 1057, 1059–60 (8th Cir. 2014) (summary judgment was appropriate in the absence of "evidence of excess hours worked every week"). Her testimony confirms that she does not have such evidence. Under those circumstances, the Club is entitled to summary judgment in its favor on her overtime claim.

## II. THE CLUB IS ENTITLED TO SUMMARY JUDGMENT ON MS. FINTON'S MINIMUM WAGE CLAIMS.

Federal and Arizona law both measure the employee's entitlement to minimum wage on a weekly basis, and calculate the employee's hourly wage during any given week on an average basis. That is, only if the employee's average effective hourly rate (total compensation paid for the week/total hours worked during the week) equates to less than the minimum wage does the employee state a cause of action for violation of the obligation to pay minimum wage. See, e.g., Douglas v. Xerox Bus. Servs., LLC, 875 F.3d 884 (9th Cir. 2017); Adair v. City of Kirkland, 185 F.3d 1055 (9th Cir. 1999); Kirchgessner v. CHLN, Inc., 74 F. Supp. 3d 1121 (D. Ariz. 2016); Ariz. Admin. Code §§ R20-5-1206(B), R20-5-1206(C).

Ms. Finton claims that the Club did not pay her for each of the hours that she claims to have worked. Complaint ¶¶ 93-94, 104-05. But all of the work that she claims to have performed without pay consists of hours that she itemized in her overtime claims. She has not disclosed any evidence that her average hourly rate in any work week equated to less than the applicable minimum wage for the week. Neither her formal MIDP disclosures (DSOF Exhibit 16) nor the Excel spreadsheet that she produced therewith (DSOF ¶ 17) identify any particular week during her employment with the Club when her average effective hourly rate (total compensation paid for the week/total hours worked during the week) was less than the applicable minimum wage. Under those

circumstances, the Club is entitled to summary judgment on counts two and three of the complaint (FLSA and Arizona minimum wage).

### III.   THE FLSA PREEMPTS MS. FINTON'S ARIZONA WAGE PAYMENT CLAIM.

Ms. Finton alleges that the overtime compensation to which she asserts she is entitled also constitute "wages" within the meaning of Arizona's wage payment laws, and that the failure to pay her those monies also subjects the Club to liability for treble damages under state law.  Complaint ¶¶ 112-17.  As this Court has recognized and held on several occasions, the Fair Labor Standards Act constitutes a claimant's exclusive remedy for claimed overtime compensation, and preempts a claim for treble damages under Arizona state law that arises from such claimed unpaid overtime.  See Nelson v. Network Infrastructure Corp., 2010 WL 11515662, *1 (D. Ariz. 2010); Colson v. Avnet, Inc., 687 F. Supp. 2d 914, 923 (D. Ariz. 2010); Wood v. TriVita, Inc., 2008 WL 6566637, *6 (D. Ariz. 2008).  Under those circumstances the Club is entitled to summary judgment on count four of the complaint.

### IV.   THE CLUB IS ENTITLED TO SUMMARY JUDGMENT ON MS. FINTON'S RECORDKEEPING CLAIMS.

Ms. Finton also claims that the Club failed to comply with recordkeeping requirements under Arizona's paid sick leave and wage payment statutes.  Complaint ¶¶ 120, 122, 127, 131.  Those claims likewise fail.

#### A.   Ms. Finton Confirms That She Had Access To Appropriate Statements Of Her Earnings And Withholdings.

The wage statute requires that employers furnish employees with "a written or electronic statement of the employee's earnings and withholdings." A.R.S. § 23-351(E) (emphasis added).  Ms. Finton knew that employees, including herself, could access their pay stubs by logging into the Club's "UltiPro" payroll system.  DSOF ¶¶ 47-49.  She received training and information on how to log into the UltiPro system, and in fact helped other employees access their pay stubs through the UltiPro system from time to time.  DSOF ¶¶ 51-53.  She was able to access her pay stubs electronically

-8-

using the UltiPro system, <u>and did so</u>.  DSOF ¶¶ 54-56.  The record includes representative samples of her pay stubs; those stubs include <u>explicit</u> statements of her "earnings" and "deductions."  DSOF ¶ 50; DSOF Exhibit 20.  Under those circumstances no genuine issue of fact exists on that component of Ms. Finton's recordkeeping claim (count six).

    **B.**    **Ms. Finton Confirms That She Had Access To Appropriate Data Concerning Accrual And Use Of Paid Sick Leave.**

The paid sick leave statute authorizes the Arizona Industrial Commission to promulgate guidelines or regulations for enforcement of the statute, A.R.S. § 23-376, and the Commission has done so.  Under those regulations, for the purposes of enforcement of the notice requirements of the statute, the "employee's regular paycheck" means "a regular payroll record that is readily available to employees and contains the information required by A.R.S. § 23-375(C), including physical <u>or electronic</u> paychecks or paystubs."  A.A.C. § R20-5-1202(13) (emphasis added); <u>see also</u> Industrial Commission of Arizona, "Frequently Asked Questions (FAQs) About Minimum Wage and Earned Paid Sick Time," at 23, 33 (available at https://www.azica.gov/frequently-asked-questions-about-wage-and-earned-paid-sick-time-laws).

The Club maintained just such an electronic record of its payroll data, including data on employees' accrual and use of paid sick leave under the Club's Arizona Sick Leave policy; that data is available in the Club's ABI system.  DSOF ¶¶ 57-59.[2] Ms. Finton was informed that she could log into her ABI account and see her sick pay listed there.  DSOF ¶ 63.  As noted above, she was trained on the use of the ABI system, including how to log into the system, and even instructed <u>other</u> employees about how to log into the ABI timekeeping system, "to clock in/out via Internet."  DSOF ¶¶ 15-22. The system was "very simple and easy to use."  DSOF ¶ 23.  (Nevertheless, Ms. Finton does not remember whether she herself ever logged into the ABI system to see her

---

[2]   Although Ms. Finton first assumed that sick time and paid time off data was stored in the <u>UltiPro</u> system, the Club informed Arizona employees that their Arizona Sick Leave policy data was stored in ABI as well as UltiPro.  DSOF ¶¶ 60-62.

1  Arizona sick pay information, and she does not know whether the Club's UltiPro or ABI
2  systems contained all of the data required by the Arizona sick pay law on all of her
3  paydays.  DSOF ¶¶ 64-65.

4      In short, the Club made the information called for under the statute
5  available through permissible electronic means.  Ms. Finton admits that she was aware of
6  where and how that data was accessible, and that she was trained in how to access that
7  information.  Under those circumstances no genuine issue of fact exists on count five.

**CONCLUSION**

9      For all of these reasons, the Club respectfully requests that the Court grant
10 summary judgment in its favor on the plaintiff's claims and dismiss the complaint in its
11 entirety.

12     RESPECTFULLY SUBMITTED this 31st day of July, 2020.

    GALLAGHER & KENNEDY, P.A.

By: /s/ Donald Peder Johnsen

    Attorneys for defendant Cleveland Indians Baseball Club, LLC

I certify that on this 31st day of July, 2020, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sandra J. Creta (018434)
Attorney for plaintiff

Barry M. Aylstock (028983)
Attorney for defendants Ryan Lantz & Lisa Lantz

/s/ Donald Peder Johnsen

8153600